IN THE UNITED STATES OF AMERICA
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:99CV144-V

| | |
|---|---|
| ROBERT CHARLES BRAGG, ) | |
| Petitioner, ) | |
| vs. ) | **ORDER** |
| LOOMIS WOODARD, Superintendent of ) Johnston County Correctional Center, ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on Respondent's Answer and Motion for Summary Judgment, filed on December 13, 2000. [Document # 4] Upon a review of the record, the arguments, and applicable authorities, the Court finds that Respondent's motion for summary judgment should be <u>granted</u> and Petitioner's §2254 petition for writ of habeas corpus should be <u>dismissed</u>.

## I. Factual and Procedural Background

On February 26, 1996, in the Superior Court of Watauga County, the Honorable Charles C. Lamm, Jr., presiding, Robert Charles Bragg ("Petitioner") was convicted of first-degree murder after trial by jury. Petitioner was sentenced to life imprisonment without parole. According to the North Carolina Court of Appeals,

> The State's evidence tended to show that on 8 December 1994, decedent's body was found face down on the floor in his mobile home by a neighbor. The neighbor called 911 and Detectives Harrison and Shook of the Boone Police Department responded to the call. At the crime scene, Detective Shook saw blood spattered on the curtains, the wall, the bed, and on a ceiling beam. There was also a pool of blood underneath decedent's face.
> The pathologist determined that decedent died as a result of blunt trauma to the head, with the fatal injuries consistent with what one would expect from a trailer

1

hitch ball swung in a sock.

Two days before the murder on 6 December 1994, defendant and Kenneth Coffey (Coffey) were arrested for public intoxication a quarter of a mile from the decedent's trailer park. During a search of the defendant, the police seized a bottle of liquor, a knife and a white athletic sock containing a trailer hitch ball. When asked about the trailer hitch ball, defendant stated: "I never know when I might need to use it on someone." Defendant and Coffey were released to their friend Monroe Brown (Brown) an hour after their arrest and all their possessions, including the trailer hitch ball, were returned. The three then went to drink beer and Brown advised defendant to leave town due to defendant's numerous police detentions. Defendant replied he would spend the night with decedent and leave town the next day, Wednesday, 7 December 1994.

Defendant and Coffey parted company for a few hours before meeting up at decedent's trailer at 3:00 a.m. on 7 December 1994, where they stayed until 7:00 a.m. After leaving the trailer, defendant and Coffey purchased wine which they drank in the A & P parking lot. According to phone records introduced at trial, at 1:14 p.m. defendant called his sister in Tennessee asking for money. The two then went to another trailer in decedent's trailer park where they continued drinking. Bonnie Jean Crawley, who lived in decedent's trailer park, spoke with defendant and Coffey about 5:00 p.m. on 7 December and noticed that both had been drinking.

Coffey saw defendant in Boone with Greg Richardson around 9:00 a.m. on 8 December 1994. Later that afternoon, Coffey took a twelve-pack of beer to decedent's trailer. When Coffey and decedent finished the beer, decedent gave Coffey money and asked him to go buy a bottle of liquor.

Coffey bought a bottle of vodka and on his way back to the trailer, Coffey met defendant at the mailboxes in front of the trailer park. Defendant asked if the decedent was drunk and if decedent had any money on him as he was known to carry large sums of cash. Defendant finally convinced Coffey to help him rob the victim. Renee Nelson and her 10-year-old son both testified that they saw defendant and Coffey walk to the decedent's trailer late in the afternoon of 8 December 1994.

After they went inside, decedent got angry with defendant and wanted him to leave. After Coffey slapped the decedent with his hand, the defendant "went mad and started beating him" with something in a white sock he pulled out of his pocket. Defendant beat the decedent in the forehead four or five times. Coffey saw blood spatter on the curtains, floor, and bed when the defendant struck the decedent.

The decedent's wallet fell to the floor and Coffey and the defendant divided the money. Coffey panicked, fled the trailer park, and called Shirley Faircloth to pick him up. Defendant ran past Coffey as he was waiting for his ride and told Coffey to keep his mouth shut.

The police picked up Coffey on 9 December 1994 and he gave a statement implicating defendant and Joe Cothren. On 10 December 1994, defendant was arrested on a fugitive from justice warrant in Mountain City, Tennessee (25 miles from Boone). When apprehended, defendant had the trailer hitch ball in his coat

2

pocket.

Thereafter, during the course of several interviews, Coffey gave several varying statements to the police. He signed all the statements as true except his last statement which his lawyer advised Coffey not to sign without him being present. While some details varied in the different statements, the defendant's role in the murder remained a common fact throughout Coffey's recitations of what happened.

Defendant's evidence tended to show that upon arrest, defendant gave the State Bureau of Investigation a complete signed statement denying his presence in Boone around the time of decedent's death and providing detailed information about his whereabouts from the time he left Boone at approximately 3:00 - 4:00 p.m. on 7 December 1994 until the time of his arrest, including names of alibi witnesses.

At trial, defendant presented the testimony of alibi witnesses who placed defendant in Mountain City, Tennessee at the time of decedent's murder. Defendant further presented evidence that during the time period after decedent's death defendant had no money.

State of North Carolina v. Bragg (unpublished opinion No.: COA97-95)

Petitioner exercised his right to a direct appeal before the North Carolina Court of Appeals. However, the Court of Appeals confirmed Petitioner's conviction and sentence on February 17, 1998.

The record does not reveal that Petitioner ever filed a timely petition for discretionary review ("PDR") to the Supreme Court of North Carolina. On February 12, 1999, Petitioner submitted a certiorari petition to the Supreme Court of North Carolina. The Supreme Court denied the petition in an Order dated June 25, 1999.

Petitioner now brings the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, filed on September 15, 1999. [Document # 1]

3

## II. Discussion of the Law

### A. <u>Standard of Review Under 28 U. S. C. § 2254</u>

In order to prevail, Petitioner must make a substantial showing of the denial of a constitutional right.[1] See 28 U.S.C. § 2253(c)(2); Williams v. Taylor, 529 U. S. 362, 120 S. Ct. 1495, 1499, 146 L. Ed. 2d 389 (2000); and Fisher v. Lee, 215 F.3d.438, 445 (4th Cir. 2000).

In an application for habeas relief under 28 U. S. C. § 2254(d), the first inquiry is whether the claim raised on habeas was "adjudicated on the merits" by the State court. Fisher, 215 F. 3d. at 445; Weeks v. Angelone, 176 F. 3d 249, 257 (4th Cir. 1999), aff'd, 120 S. Ct. 727 (2000). If the claim was properly presented to the State court and the State court adjudicated it, the deferential standard of review set forth in § 2254(d) applies and federal habeas relief may not be granted unless the relevant State court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1),(2); See Williams, 120 S. Ct. at 1516; Accord Fisher, 215 F.3d at 445; Weeks, 176 F.3d at 258; and McCarver v. Lee, 221 F.3d 583 (4th Cir. 2000). If, however, "a petitioner has properly presented a claim to the State court but the State court has not adjudicated the claim on the merits, . . . review of questions of law and mixed questions of law and fact is de novo." Fisher, 215 F.3d at 445; accord Weeks, 176 F.3d at 258.

---

[1] Because Petitioner filed his federal habeas petition after the Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996, the AEDPA amendments apply to the instant petition. See Mueller v. Angelone, 181 F.3d 557, 565-69 (4th Cir.), cert. denied 527 U. S. 1065, 120 S. Ct. 37, 144 L. Ed. 2d 839 (1999).

4

Quoting Justice O'Connor's formulation of the standard of review in Williams v. Taylor[2], *supra*, the Fourth Circuit most recently stated:

> Having identified the governing Supreme Court law, we are required to give deference to the state court's adjudications made pursuant to that law, as required by 28 U.S.C.A. § 2254(d)....[W]e review the state court's adjudication only to determine whether it is "contrary to [this] clearly established Federal law," or whether it "involved an unreasonable application of ... [this] clearly established Federal law." 28 U.S.C.A. § 2254(d). A state court decision is "contrary to ... clearly established Federal law as determined by the Supreme Court," id., "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts," Williams, --- U.S. at ----, 120 S. Ct. at 1523. A state court decision "involve[s] an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, --- U.S. at ----, 120 S. Ct. at 1523. Of particular import, we must keep in mind that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1522. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable."Id.

Fisher, 215 F.3d at 447.

### B. Exhaustion Requirement Under 28 U. S. C. § 2254(b)(1)(A)

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an

---

[2] STEVENS, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, III, and IV, in which O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined, and an opinion with respect to Parts II and V, in which SOUTER, GINSBURG, and BREYER, JJ., joined. O'CONNOR, J., delivered the opinion of the Court with respect to Part II (except as to the footnote), in which REHNQUIST, C. J., and KENNEDY and THOMAS, JJ., joined, and in which SCALIA, J. joined, except as to the footnote, and an opinion concurring in part and concurring in the judgment, in which KENNEDY, J., joined. REHNQUIST, C. J., filed an opinion concurring in part and dissenting in part, in which SCALIA and THOMAS, JJ., joined.

5

opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. The exhaustion doctrine, first announced in Ex parte Royall, 117 U.S. 241 (1886), is now codified at 28 U.S.C. § 2254(b)(1)[3]," O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

A claim is not exhausted until the Petitioner has "fairly presented" his claim to the State's highest court. Picard v. Connor, 404 U. S. 270, 275-78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Ramdass v. Angelone, 187 F.3d 396, 409 (4th Cir. 1999), aff'd in part, 120 S. Ct. 2113 (2000) (quoting, Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.), cert. denied, 522 U.S. 833 (1997)). Accord Bell v. Jarvis, 198 F.3d 432, 436 (4th Cir. 2000) (where petitioner failed to file a petition for discretionary review before the North Carolina Supreme Court, but fully litigated his claim in state post-conviction proceedings, petitioner has exhausted state remedies as required by 28 U.S.C. § 2254(b)(1)(A) by raising the substance of his present claims in the State courts); and Weeks, 176 F.3d at 262.

---

[3] Title 28, United States Code, Section 2254(b)(1) provides that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (2000).

## C. Default Under an Independent and Adequate State Procedural Rule

There is no issue of default under an independent and adequate state rule in this case.

## D. Factual Findings Pursuant to 28 U.S.C. § 2254(e)

On habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he applicant [for habeas relief] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fisher, 215 F.3d. at 446 (quoting 28 U.S.C.A. § 2254(e)(1)).

## III. Analysis

Petitioner alleges that a writ of habeas corpus should issue due to the following: 1) the trial court's refusal to conduct an *in camera* inspection of Coffey's sealed mental health records was a violation of Petitioner's constitutional right to material, exculpatory evidence; and 2) the exclusion of Coffey's prior inconsistent statement was a violation of Petitioner's constitutional right to confront witnesses.

## A. Threshold Issues of Exhaustion

As an initial matter, the Court must determine whether Petitioner has exhausted his state remedies under § 2254(b)(1)(A). Respondent's argument is two-fold. According to Respondent, because Petitioner failed to file a petition for discretionary review ("PDR") before the North Carolina Supreme Court, and instead filed a writ of certiorari to the North Carolina Supreme Court, this Court has no jurisdiction over Petitioner's claims. Respondent also argues that Petitioner failed to raise Claim Two, his confrontation clause claim, before the State court.

The first issue before the Court is whether petitioning the N.C. Supreme Court for writ of certiorari is sufficient to satisfy one complete round of the State's appellate review process under

O'Sullivan v. Boerckel, *supra*.

In O'Sullivan, the United States Supreme Court addressed the question of whether a prisoner must seek review in a state court of last resort when that court has discretionary review over its docket. The Supreme Court held that § 2254(b)(1)(A) required as much. As in the instant case, in O'Sullivan, the issue arose due to the prisoner's failure to file a petition for discretionary review ("PDR") before the state's highest court. The Supreme Court found that under Illinois's two-tiered system, normal appellate procedure required that the prisoner file a PDR. However, the Supreme Court also made it clear that § 2254(c)[4] was not to be interpreted in a restrictive fashion which would require that a state prisoner invoke any possible avenue of state court review. Id. at 844. Instead, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845.

On at least Claim One, it appears that Petitioner has done that with his writ for certiorari. Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure clearly provides Petitioner with the right to raise his claims before the North Carolina Supreme Court.[5] Moreover, Respondent fails to point to any authority distinguishing these two discretionary petitions for purposes of exhaustion

---

[4] Title 28, United States Code, Section 2254(c) provides that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."

[5] Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure reads as follows:

    (1) Review of the Judgements and Orders of Trial Tribunals. The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgements and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to G.S. 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.
N. C. R. App. P. 21.

8

under § 2254(b)(1)(A).[6]

Regarding Claim Two, Respondent argues that Petitioner first stated his claim in federal constitutional terms (i.e., federal constitutional right to confront witnesses) in his petition for certiorari to the Supreme Court of North Carolina. (Respondent's Exhibit 4 at 17-19.) Thus, the second issue is whether Petitioner is precluded from habeas review on exhaustion grounds for failing to state it in federal constitutional terms on direct appeal. The Court finds that he is.

On direct appeal, Petitioner only stated this claim in state law terms, presenting the alleged error as an evidentiary issue. (Respondent's Exhibit 3 at 14-16.) While the facts alleged remain the same, this is insufficient to overcome the exhaustion requirement under § 2254(b)(1)(A). See Duncan v. Henry, 513 U. S. 364, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court but in state court."); Anderson v. Harless, 459 U. S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (holding that the presentation of all facts necessary to state a federal claim or presentation of similar state law claim is not sufficient to satisfy exhaustion requirement - federal constitutional claim must be explicitly raised in state proceedings). For this reason, the Court may not review Petitioner's second

---

[6] A review of Fourth Circuit case law preceeding the O'Sullivan decision recognizes that at least in circumstances where a defendant files a motion for appropriate relief and also petitions for writ of certiorari to the North Carolina Supreme Court, exhaustion is satisfied. See Strader v. Allsbrook, 656 F.2d 67 (4th Cir. 1981)(holding that petitioner failed to present his claim "by any available procedure" as is required to satisfy the exhaustion requirement of §2254(b) and (c) where he did not file writ of certiorari before the Supreme Court of North Carolina).

9

claim. The Court now turns to Petitioner's remaining claim for relief.

## B. Trial Court's Refusal To Conduct *In camera* Inspection of Coffey's Sealed Mental Health Records

Petitioner argues that his Sixth Amendment guarantee of compulsory process was violated. More specifically, Petitioner contends that he made a plausible showing under federal law that required the trial court to conduct an *in camera* review of material, exculpatory evidence (Coffey's mental health records). According to Petitioner, "Coffey's competence and ability to truthfully relate a memory had been the subject of prior examinations and tests." Thus, Coffey's prior mental health records possibly included evidence material to his defense.

As Respondent concedes, Petitioner fairly presented this issue to the North Carolina Court of Appeals. Thus, this issue is ripe for review by the Court under the standard formulated in Williams v. Taylor. The first step in this §2254(d)(1) inquiry is to determine whether there is "clearly established [Supreme Court] precedent" governing the claim. Williams, 120 S. Ct. at 1512. Both parties identify the controlling precedent in this case as Pennsylvania v. Ritchie, 480 U. S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), which mandates a balancing test between state-created privilege and the right of a criminal defendant to exculpatory evidence.

Under Ritchie, the trial court is to evaluate whether a defendant has made a plausible showing that otherwise privileged materials include exculpatory evidence. If the *in camera* review indicates that the materials include exculpatory evidence, then the court must weigh any claims of privilege against the accused's need to use the materials as evidence at trial. Ritchie, 480 U. S. at 57, n. 15. However, Ritchie makes clear that disclosure is not required unless the information is "material" to the defense of the accused. Id. at 58. "Evidence is material only if there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (*citing* United States v. Bagley, 473 U. S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

The second step under § 2254(d)(1) is to determine whether the North Carolina Court of Appeals' ruling "was contrary to, or involved an unreasonable application of" the controlling precedent. Williams, 120 S. Ct. at 1516. The State's ruling was neither. On direct appeal, the North Carolina Court of Appeals rejected Petitioner's claim, stating:

> We first note that the trial court is in the best position to determine whether the exclusion of such information would be prejudicial to a defendant and ordinarily should perform an in camera review of documents. Without deciding whether the trial court should have performed an in-camera review of the documents, we have reviewed the sealed mental health records which relate primarily to Coffey being competent to stand trial. We fail to see how this information could have benefitted the defendant as he examined Coffey about his head injury, memory loss, treatment at Broughton Hospital, and New River Mental Health Clinic, as well as about any medications he was taking. As no prejudice resulted to the defendant due to the failure of the trial court to inspect the records in camera, we find this assignment of error to be without merit.

The Court of Appeals correctly recognized that an *in camera* review was proper under these facts and clearly implied that the trial court should have done just that. This assessment is consistent with Ritchie. However, because the Court of Appeals conducted its own *in camera* review of the documents at issue here, any error of the trial court is cured. Further, the appellate court's finding that Petitioner was not prejudiced by that error controls the instant case. Under Ritchie, the privileged records are not to be disclosed unless they are found to be material. Ritchie, 480 U. S. at 57. By holding that the non-disclosure of the sealed mental health records resulted in no

11

prejudice, the North Carolina Court of Appeals did not find the information material to Petitioner's defense. Given this, the Court finds that the State court's decision is not contrary to or an unreasonable application of clearly established federal law.

Finally, to the extent Petitioner requests that this Court conduct its own *in camera* review of Coffey's mental health records, his request is denied.

## IV. Conclusion

For the foregoing reasons, the Court shall grant Respondent's Motion for Summary Judgment and dismiss the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment is hereby **GRANTED**. It is further ordered that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is hereby **DENIED**.

THIS the 24th day of December, 2000.

**RICHARD L. VOORHEES**
**UNITED STATES DISTRICT COURT JUDGE**

* * MAILING CERTIFICATE OF CLERK * *

Re: 5:99-cv-00144

True and correct copies of the attached were mailed by the clerk to the following:

    J. Phillip Griffin Jr., Esq.
    N. C. Prisoner Legal Services, Inc.
    P. O. Box 25397
    Raleigh, NC  27611

    Clarence J. DelForge III, Esq.
    NC Dept of Justice
    Fed Habeas Section
    P. O. Box 629
    Raleigh, NC  27602-0629

cc:
Judge ( )
Magistrate Judge ( )
U.S. Marshal ( )
Probation ( )
U.S. Attorney ( )
Atty. for Deft. ( )
Defendant ( )
Warden ( )
Bureau of Prisons ( )
Court Reporter ( )
Courtroom Deputy ( )
Orig-Security ( )
Bankruptcy Clerk's Ofc. ( )
Other_____ ( )

Date: 1-29-01

Frank G. Johns, Clerk
By: Carolyn B. Bouchard
    Deputy Clerk